

EXHIBIT A



# COMMONWEALTH of VIRGINIA
## Executive Department

**TO ALL WHOM PRESENTS SHALL COME – GREETINGS:**

1. In May of 1983, in Fauquier County, Earl Washington was arrested for breaking and entering the home of Mrs. Helen Weeks, a 73-year-old woman, stealing a gun and money from her, and brutally beating her with a chair after she awoke to discover him in her house. He also shot his brother with the gun he stole from Mrs. Weeks. As a result of those crimes, Washington pled guilty to statutory burglary and malicious wounding and he was sentenced to a 30-year prison term (two consecutive 15-year prison terms) for those offenses.

2. While Washington was in custody for those criminal offenses, he was questioned about the rape and murder of Mrs. Rebecca Williams a year earlier in Culpeper County. Washington confessed to raping and murdering Rebecca Williams in her apartment on June 4, 1982.

3. Based on Washington's confession and other corroborating evidence, Washington was tried and convicted of the capital murder and rape of Rebecca Williams and sentenced to death.

4. Ten years later, Governor L. Douglas Wilder reviewed new DNA tests of samples taken from tile victim and Washington. The DNA test results were inconclusive but did not exonerate Washington. In light of that new information, Governor Wilder commuted Washington's death sentence to life in prison with tile possibility of parole.

5. On June 1, 2000, I directed the Virginia Division of Forensic Science to perform further DNA tests on evidence taken from the apartment of Mrs. Williams and her body. The purpose of these tests was to apply the most technologically advanced scientific methods to the evidence available in an effort to confirm or disprove Earl Washington's presence in the apartment of Rebecca Williams on June 4, 1982.

6. Since June 1, 2000, the Virginia Division of Forensic Science has proceeded to perform the DNA tests on all known and available evidence.

7. According to the results of the new DNA tests, Washington is excluded from semen taken from Mrs. Williams' body and his DNA could

not be located elsewhere in the apartment.

8. The DNA results further revealed the semen of another person on a blue blanket taken from the scene of the crime. The DNA from semen on the blue blanket matched the DNA of a convicted rapist. However, the DNA on the blue blanket did not match the DNA of the sole sample of semen taken from Mrs. William's body. As a result, the Division of Forensic Science could not confirm the DNA found on the blue blanket was Rebecca Williams' rapist.

9. In my judgment, a jury afforded the benefit of the DNA evidence and analysis available to me would have reached a different conclusion regarding the guilt of Earl Washington. Therefore, upon careful deliberation and review of all of the evidence, - as well as the circumstances of this matter, I have decided it is just and appropriate to intervene in the judicial process by granting Earl Washington an absolute pardon for the capital murder and rape of Rebecca Williams.

NOW, THEREFORE, in accordance with the authority granted to me as Governor of Virginia under Article V, Section 12 of the Constitution of Virginia, I, James S. Gilmore, III, Governor of the Commonwealth of Virginia, do hereby grant unto Earl Washington an Absolute Pardon from the convictions of rape and capital murder handed down by the Circuit Court of Culpeper County on March 20, 1984.

Given under my hand and under the Lesser Seal of the Commonwealth at Richmond, this 2nd day of October in the year of our Lord Two Thousand and the 225th year of the Commonwealth of Virginia.

*[Signature]*
Governor

Attest:
*[Signature]*
Secretary of the Commonwealth



# COMMONWEALTH of VIRGINIA
## Office of the Governor



EXHIBIT B

James S. Gilmore, III
Governor

FOR IMMEDIATE RELEASE
October 2, 2000

Contact: Mark A. Miner
Phone: (804) 692-3110
Pager: (888) 646-5017
Internet: http://www.thedigitaldominion.com

## STATEMENT OF GOVERNOR JIM GILMORE REGARDING THE PARDON OF EARL WASHINGTON

"In May of 1983, in Fauquier County, Earl Washington was arrested for breaking and entering the home of Mrs. Helen Weeks, a 73-year-old woman, in the middle of the night and stealing a gun and money from her, and brutally beating her with a chair after she awoke to discover him in her house. He also shot his brother with the gun he stole from Mrs. Weeks. As a result of those crimes, Washington pled guilty to statutory burglary and malicious wounding and he was sentenced to a 30-year prison term (two consecutive 15-year prison terms) for those offenses.

"While Washington was in custody for those criminal offenses, he was questioned about the rape and murder of Mrs. Rebecca Williams which had occurred a year earlier in Culpeper County. Washington confessed to raping and murdering Rebecca Williams in her apartment on June 4, 1982. Washington subsequently recanted his confession at trial. Based on Washington's confession and other corroborating evidence, Washington was tried and convicted of the capital murder and rape of Rebecca Williams and sentenced to death. State and federal courts upheld those convictions.

"Ten years later, Governor L. Douglas Wilder reviewed new DNA tests of samples taken from the victim and Washington. The DNA test results were inconclusive but did not exonerate Washington. In light of that new information, Governor Wilder commuted Washington's death sentence to life in prison with the possibility of parole.

"On June 1, 2000, I directed the Virginia Division of Forensic Science to perform further DNA tests on evidence taken from the apartment of Mrs. Williams and her body. The purpose of these tests was to apply the most technologically advanced scientific methods to the evidence available in an effort to confirm or disprove Earl Washington's presence in the apartment of Rebecca Williams on June 4, 1982.

"Since June 1, 2000, the Virginia Division of Forensic Science has proceeded to perform the DNA tests on all known and available evidence. Unfortunately, several samples of semen taken from Mrs. Williams' body at the time of the investigation had deteriorated due to age and could not be analyzed. Only one sample of forensic evidence could be tested, though the Division of Forensic Science could not confirm it contained semen of the rapist. According to the results of the DNA tests performed on that sole sample, Washington is excluded from semen taken from Mrs. Williams' body.

-More-

"It is important for the public to understand that absence of DNA evidence does not necessarily mean an individual is absent from the crime scene – just that he has not left any DNA markers.

"Therefore, in an effort to ensure all other evidence – forensic or otherwise – was thoroughly examined, I directed the State Police to conduct a thorough review of the case and to seek any other evidence that might be tested by the Division of Forensic Science.

"In the course of that review, a blue blanket taken from the scene of the crime was tested and DNA tests revealed the semen of another person. The DNA from semen on the blue blanket matched the DNA of a convicted rapist. However, the DNA on the blue blanket did not match the DNA of the sole sample of semen taken from Mrs. Williams' body. Again, the Division of Forensic Science could not confirm the DNA found on the blue blanket was Rebecca Williams' rapist.

"In my judgment, a jury afforded the benefit of the DNA evidence and analysis available to me today would have reached a different conclusion regarding the guilt of Earl Washington. The Constitution of Virginia grants to the Governor the solemn responsibility to grant clemency where evidence indicates the judicial system has erred. Therefore, upon careful deliberation and review of all of the evidence, as well as the circumstances of this matter, I have decided it is just and appropriate to intervene in the judicial process by granting Earl Washington an absolute pardon for the capital murder and rape of Rebecca Williams.

"I am deeply sympathetic to the pain and anguish already suffered by the family and friends of Rebecca Williams, and I regret any reliving of that pain these events may cause. I am directing the State Police to reopen their investigation of the violent crime that occurred on June 4, 1982."

######

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

EXHIBIT C

| | |
|---|---|
| EARL WASHINGTON, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>)<br>)<br>KENNETH H. BURAKER, et al., )<br>)<br>Defendants. ) | Civil Action No. 3:02 CV 106<br>District Judge Norman K. Moon<br><br>B. Waugh Crigler,<br>U.S. Magistrate Judge |

## PROPOSED STIPULATION OF FACT REGARDING DNA EVIDENCE

Plaintiff Earl Washington, Jr. and Defendants Denny M. Slane and Curtis Todd Wilmore, personal representative for the Estate of Curtis Reese Wilmore, hereby to stipulate to the following:

1. On November 7, 2003, Plaintiff Earl Washington, Jr. filed and served a Motion for Court-Ordered Subpoena for the Release of Forensic Evidence to Dr. Edward T. Blake for Inspection and/or DNA testing.

2. The purpose of Plaintiff's motion is to establish that the DNA testing and analysis using currently available technology yield different results than forensic technology available in 1983.

3. A jury afforded the benefit of the DNA evidence and analysis available in the year 2000 or later would have reached a different conclusion regarding the guilt of Earl Washington, Jr. than was reached in 1984.

4. As such, there exists no need for the release of the requested forensic evidence to Dr. Edward T. Blake for inspection and/or DNA testing in this case.

Seen and agreed this _____ day of _____, 200____:

_____

William G. Broaddus (VSB # 5284)
Stephanie L. Karfias (VSB # 37862)

Counsel for Denny M. Slane and Curtis Todd Wilmore,
Personal Representative of the Estate of Curtis Reese Wilmore

_____

Robert T. Hall (# 4826)
Victor M. Glasberg (# 16184)
Kelly M. Baldrate (# 43822)
Barry A. Weinstein (# 34093)
Eric M. Freedman
Peter Neufeld
Barry Scheck
Debi Cornwall
Steven D. Rosenfield (# 16539)

Counsel for Earl Washington, Jr.

## **ORDER**

Upon consideration of the above Stipulation of Fact Regarding DNA Evidence, it is this _____ day of _____, 20____, hereby ORDERED that Plaintiff's Motion for Court-Ordered Subpoena for the Release of Forensic Evidence is DENIED.

_____
Hon. B. Waugh Crigler,
U.S. Magistrate Judge

2