CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
C'ville
APR 1 3 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| EARL WASHINGTON, JR., *Plaintiff,* v. KENNETH H. BURAKER, ET AL., *Defendants.* | CIVIL ACTION NO. 3:02-CV-00106 <br><br> ORDER AND OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' motions *in limine*, specifically Washington's motions:

(1) to exclude expert opinions as to Wilmore's reputation and intent, filed on January 6, 2006;

(2) to bar Wilmore from introducing positive character and/or reputation evidence, filed on March 27, 2006;

(3) to exclude evidence of conduct, confessions, charges or convictions attributed to Washington unrelated to the Williams murder, filed on March 27, 2006;

(4) to strike opinions by defense expert Michael Napier, filed on March 27, 2006;

(5) to strike opinions by defense expert John Douglass, filed on March 27, 2006;

(6) to strike opinions by defense expert Dr. Edward A. Peck, filed on March 27, 2006;

1

and Wilmore's motions:

(1) to exclude expert testimony, filed on March 15, 2006;

(2) to amend or correct his exhibit list, filed on March 23, 2006;

(3) to amend his affirmative defenses, filed on March 26, 2006;

(4) to exclude evidence related to "leading questions" and "feeding," filed on March 27, 2006. The Court will address each motion in turn.

## Washington's Motions

(1) Washington's motion to exclude expert opinions as to Wilmore's character and reputation is GRANTED. Napier has never met Wilmore or conferred with anyone who knew his professional reputation, nor is he qualified as an expert to testify as to Wilmore's character or intent. Douglass similarly may not testify as to whether or not Wilmore's actions suggest an intent to fabricate.

(2) Washington's motion to bar Wilmore from introducing character and/or reputation evidence is DENIED. Wilmore may introduce evidence of pertinent traits of his own character in accord with Rule 404(a)(1). In *Mourikas v. Vardianos*, 169 F.2d 53, 59 (4th Cir. 1948), the Fourth Circuit held, "Inasmuch as plaintiff's proof tended to show the commission of a crime by the defendants, and a finding for the plaintiff would really be tantamount to a finding that defendants had committed a crime, it would seem that . . . evidence of the character of the defendants would be admissible for all purposes." Although this case predates the modern Federal Rules of Evidence, *Perrin v. Anderson*, 784 F.2d 1040 (10th Cir. 1986), and *Bolton v. Tesoro Petroleum Co.*, 871 F.2d 1266 (5th Cir. 1989), apply the same principle and indicate that Wilmore may introduce evidence of pertinent traits of Curtis Reese Wilmore's character. Further,

2

the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. The plaintiff may cross examine any character witnesses, and these witnesses must still have a proper basis for their knowledge of Curtis Reese Wilmore's character.

(3) Washington's motion to exclude evidence of conduct attributed to Washington unrelated to the Williams murder is DENIED. This evidence is relevant to whether Wilmore intended to fabricate evidence or believed that he was fabricating evidence against Washington. Although Wilmore's belief in Washington's guilt would be no defense to fabrication, his knowledge that Washington had confessed to the Weeks assault and other crimes is nonetheless relevant to his intent in conducting the interrogation as he did. Further, assuming that Washington chooses to argue that Wilmore's fabrication caused Bennett to charge him with the murder, this information is relevant to rebut that argument. Finally, to the extent that Washington chooses to argue that the denial of parole is among his damages, this evidence is also relevant. Nor is this evidence more prejudicial than probative. The jury will be instructed of the limited purposes for which it is admitted and cautioned that it is not to consider this evidence for any other purpose.

(4) Washington's motion to strike opinions by the defense expert Michael Napier is GRANTED IN PART and DENIED IN PART. Because Washington has withdrawn his objection to Napier's opinion on prevalence of the Reid technique in 1983, that issue is not before the Court. Napier may not opine, however, on whether Culpeper residents would have gossiped about the Williams murder, nor may he opine on whether Washington was able to portray himself as more mentally capable than he was. The former opinion will not be helpful to the jury,

3

while the latter lacks foundation and is outside the scope of Napier's expertise. He may, however, opine based on his knowledge and experience on the procedures used by police in conducting an investigation. Napier further may not opine to the jury on the probative value of Washington's confession to other crimes; this information may be admitted for its effect on Wilmore, but it would be misleading to imply that it has any probative legal value as to Washington's guilt. He may rely on any information reasonably relied on by experts in this field in forming his opinion, however. Napier also may not opine that neither Wilmore nor Hart fabricated evidence during their interrogation. Although expert testimony is not inadmissible merely because it embraces the ultimate issue in the case, here the opinion is unlikely to be helpful to the jury.

(5) Washington's motion to strike opinions by defense expert John Douglass is GRANTED IN PART and DENIED IN PART. Given Douglass' qualifications, the argument that he has not participated in the specific type of interview at issue in this case does disqualify him from testifying as an expert on police interrogation. He may not opine regarding coercion (nor may Washington's experts) because coercion is not at issue in the trial. He may, however, opine on the other five grounds enumerated in Wilmore's brief in opposition at page 5, subject to the limitations described in paragraph 1, *supra*.

(6) Washington's motion to strike opinions by defense expert Dr. Edward A. Peck is GRANTED IN PART and DENIED IN PART. Dr. Peck is qualified to testify as an expert on the issue of whether Washington has mental retardation, and his testimony otherwise satisfies the requirements of Rule 702. The mere fact that his conclusions are inconsistent with those offered by other doctors who have evaluated Washington is not necessarily grounds for disqualification,

4

given that he reached those conclusions by applying reliable methods to sufficient data. Dr. Peck may not, however, opine on what a layperson interviewing Washington would believe about his capacity. Dr. Peck himself is not a layperson, and the jury will have the opportunity to draw its own conclusions based on Washington's testimony and demeanor. At most, Peck may testify to what Washington's demeanor and behavior indicated to him, based on his knowledge and training. Further, the opinions rendered in Opinion 12 must be excluded at this point as well, unless the defense can show a basis for these opinions that meets the requirements of Rule 702 and *Daubert*.

## Wilmore's motions

(1) Wilmore's motion to exclude the testimony of Washington's experts Aiken and Jackson and to limit the testimony of Washington's expert Grassian is GRANTED IN PART and DENIED IN PART. Aiken may testify, assuming sufficient basis, as to what programs were generally available in Virginia prisons when Washington was incarcerated. He may also testify, assuming sufficient basis, to whether there were programs available that someone of Washington's capacity could have participated in. He may not testify specifically as to what programs Washington would have participated in if given the chance.

Jackson may not testify that Washington would have been released on parole in 1989, nor may he testify that he himself would have voted for parole. He may testify, assuming he knows this information, as to what percentage of offenders convicted of violent crimes similar to Washington's received parole; however, he may not testify as to what percentage of Virginia inmates generally received parole. In other words, in arguing that Washington was deprived of a statistically significant opportunity for parole, the defense must relate those statistics to

5

Washington's particular situation and not to the general prison population.

Dr. Grassian's opinions may, of course, be based on inadmissible hearsay. He may not relay those hearsay statements on which he relied to the jury, however. Nor may he opine on areas within the jury's common knowledge; hence he may not characterize the death row experience for an innocent man, when he himself stated that one did not need to be an expert to know its effects. However, Dr. Grassian may testify, if he has a basis to do so, on whether incarceration on death row caused or aggravated Washington's post-traumatic stress disorder.

(2) Wilmore's motion to amend his exhibit list to include a picture of Curtis Reese Wilmore is DENIED for the reasons stated in the hearing.

(3) Wilmore's motion to amend his affirmative defenses is also DENIED. This case is now less than two weeks before trial and has been pending since 2002. Allowing amendment at this late date would cause substantial prejudice to Washington and might further delay the resolution of the case.

(4) Wilmore's motion to exclude evidence of "leading questions" and "feeding" by Wilmore is DENIED. The events during Washington's interrogation are a necessary part of the evidence in this case. Although the use of leading questions is not in itself a constitutional violation, it is nonetheless relevant to Washington's claim. Washington argues that the fabrication occurred in two steps: Wilmore first fed Washington the nonpublic information, and then misrepresented that Washington was its source. Hence, evidence of leading or feeding is relevant to this first step. Any concerns that the jury will misinterpret this evidence can be cured by an instruction on this point.

It is so ORDERED.

The Clerk of the Court is directed to send a copy of this Order to all parties.

ENTERED: /s/ Norman K. Moon
U.S. District Judge

April 13, 2006
Date